**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE: BOSTON SCIENTIFIC CORP.,
       PELVIC REPAIR SYSTEM
       PRODUCTS LIABILITY LITIGATION

MDL No. 2326

--------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Cindy Brawley & Travis Brawley v. Boston Scientific Corp.*      No. 2:13-cv-23832

**MEMORANDUM OPINION AND ORDER
(Defendant's Motion for Summary Judgment)**

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 30]. For the reasons set forth below, the Motion is **GRANTED**, and this case is **DISMISSED with prejudice**.

**I.    Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs

and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Brawleys' case was selected as a Wave 2 case by the plaintiffs.

On March 2, 2005, Ms. Brawley was surgically implanted with the Advantage Transvaginal Mid-Urethral Sling System (the "Advantage"), a product manufactured by BSC to treat SUI. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 30], at 3; Pl. Fact Sheet [Docket 30-1], at 5). She received her surgery at a hospital in Jonesboro, Arkansas. (Mem. in Supp. [Docket 30], at 3). Ms. Brawley claims that as a result of implantation of the Advantage, she has experienced multiple complications, including back pain, urinary problems, recurrent urinary tract infections, dyspareunia, mesh erosion, mesh extrusion, bleeding, vaginal discharge, cystocele, rectocele, and urinary incontinence. (*Id.*). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (*Id.* at 2 (citing to Pl.'s Short Form Compl.)). In the instant motion, BSC argues that each of Ms. Brawley's claims is barred by Arkansas's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Brawley's case. BSC also argues that if Ms. Brawley's claims are barred as untimely, Mr. Brawley's claim for loss of consortium is also time-barred and should be dismissed.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL

cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the Brawleys did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Brawley received the Advantage implantation surgery in Arkansas. (Pl. Fact Sheet [Docket 30-1], at 5). Thus, the choice-of-law principles of Arkansas guide this court's choice-of-law analysis.

    The parties agree, as does this court, that these principles compel application of Arkansas

law to the plaintiffs' claims. Arkansas courts consider the *lex loci delicti* doctrine and Dr. Robert A. Leflar's[1] five choice-influencing factors in conjunction when analyzing choice of law problems. *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838, 847 (Ark. 2006); *Schubert v. Target Stores, Inc.*, 201 S.W.3d 917, 922-23 (Ark. 2005). "Under the doctrine of *lex loci delicti*, the law of the place where the wrong took place is the proper choice of law." *Ganey*, 234 S.W.3d at 846. The five choice-influencing factors, promulgated by Dr. Leflar, include (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. *Id.* The Leflar factors, however, are used only to soften "a rigid formulaic application" of the *lex loci delicti* doctrine. *See Gomez v. ITT Educ. Servs., Inc.*, 71 S.W.3d 542, 546 (Ark. 2002). In the case at bar, those factors are inapposite. The implantation surgery that allegedly resulted in Ms. Brawley's injuries took place in Arkansas, where Ms. Brawley is a resident. (Pl. Fact Sheet [Docket 30-1], at 2, 5). Moreover, both parties agree that Arkansas is the proper choice of law. Thus, I apply Arkansas's substantive law—including Arkansas's statute of limitations—to this case.

### III.     Discussion

I begin by reviewing the relevant undisputed facts. Ms. Brawley underwent implantation of the Advantage on March 2, 2005. (Pl. Fact Sheet [Docket 30-1], at 5). She began to experience symptoms of bodily injury around July 2005. (*Id.* at 7). At an appointment with Dr. Ladd Scriber, on July 1, 2005, Ms. Brawley was informed that the mesh had eroded into her bladder. (*Id.*). Ms. Brawley attributed her bodily injuries to the Advantage at that time. (*Id.*). On July 5, 2005, Ms. Brawley underwent a procedure to excise and remove part of the mesh. (*See*

---

[1] Dr. Leflar was a Distinguished Professor at the University of Arkansas, a noted scholar, and a recognized authority on conflicts law. *See Wallis v. Mrs. Smith's Pie Co.*, 550 S.W.2d 453, 456 n.2 (Ark. 1977).

Cindy Brawley Dep. [Docket 30-2], at 227:1–19). At that time, Dr. Scriber informed Ms. Brawley that her symptoms were a result of the implantation of the Advantage sling. (*Id.* at 309:3–18). In fact, the purpose of the procedure, in Ms. Brawley's own words, was to "resolve her ongoing mesh related injuries." (Pl. Fact Sheet [Docket 30-1], at 6).

Due to her persistent stress urinary incontinence, Ms. Brawley underwent a vaginal exploration procedure for additional tension-free vaginal tape (the "TVT tape") on September 19, 2006. (Brawley Med. Rs. Sept. 19, 2006 [Docket 30–4], at 1). The day after the procedure, Dr. Scriber informed her that he did not place the TVT tape because "the mesh had eroded [her] urethra until it was paper thin, and . . . when he went in to try to do another one, it busted and he had to take . . . tissue from [her] vaginal area and fix [her] urethra." (Cindy Brawley Dep. [Docket 65-2], at 263:14–264:8). Ms. Brawley knew that the erosion had been caused by the mesh at that time. (*See id.* at 264:9–13 ("From my understanding, he told me that it was because the mesh had eroded or rubbed against [the urethra] and–it was the mesh is what I understood.")). On October 20, 2006, Ms. Brawley did some online research to get more "information about the mesh that was inside of [her]." (*Id.* at 180:15–21). Subsequently, she contacted a lawyer about a possible medical malpractice claim. (*Id.* at 175:5–11). Ms. Brawley did not learn that the mesh could be defective until she saw an advertisement about mesh litigation on television in 2011. (*Id.* at 322:9–17). The Brawleys filed suit on May 31, 2013.

Arkansas's Product Liability Act provides that "[a]ll product liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs." Ark. Code Ann. § 16-116-103 (2014).[2] In *Martin v. Arthur*, the Supreme

---

[2] All of the plaintiffs' claims are governed by the limitations period of the Arkansas Products Liability Act. *See IC Corp. v. Hoover Treated Wood Prods., Inc.*, 385 S.W.3d 880, 885 (Ark. Ct. App. 2011) (explaining that the Act defines "product liability actions" as "including *all* actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly,

6

Court of Arkansas adopted the discovery rule for medical product liability claims, holding that the statute of limitations for such claims "does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." 3 S.W.3d 684, 690 (Ark. 1999). In other words, a cause of action will accrue "when the plaintiff first becomes aware of his or her condition, including both the fact of the injury and the probable causal connection between the injury and the product's use, or when the plaintiff by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *IC Corp. v. Hoover Treated Wood Prods., Inc.*, 385 S.W.3d 880, 883 (Ark. Ct. App. 2011).

The plaintiffs argue that the discovery provision of section 16-116-103 is triggered upon discovery that a defective product caused the injury. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. Based on Statute of Limitations ("Resp.") [Docket 65], at 3–5). Therefore, the plaintiffs contend that the statute of limitations did not start until 2011, when Ms. Brawley saw television commercials and learned that the mesh was defective. (*Id.* at 5–7). The plaintiffs point to three cases to support this argument: (1) *Martin*, (2) *Mulligan v. Lederle Laboratories., a Division of American Cyanamid Co.*, 786 F.2d 859 (8th Cir. 1986), and (3) *Scroggin v. Wyeth*, 586 F.3d 547 (8th Cir. 2009). None of these cases stands for this proposition. Specifically, none of the holdings in these cases interpretively import a "defect" requirement into the statute. *See Martin*, 3 S.W.3d at 690 ("By using the date of the implantation of the [product] in 1991 as opposed to [plaintiff's] awareness of the nature of the harm, the trial court's order of dismissal runs counter to this analysis."); *Mulligan*, 786 F.2d at 864 ("Here, the jury had sufficient evidence to conclude either that the true nature of [plaintiff's] illness did not manifest itself until 1976 or that it took until 1976 for [plaintiff] to obtain a diagnosis that informed her of the nature

---

testing, service, warning, instruction, marketing, packaging, or labeling of any product") (emphasis added).

and cause of her condition."); *Scroggin*, 586 F.3d at 564–65 ("The assertion that [plaintiff] would have been aware of the risk . . . ascribes to [her] the duty of being aware of not simply the possibility that her hormone replacement therapy caused her [injury], but that a causal connection was probable. The jury could reasonably conclude that if medical doctors were unsure of the risk, it is highly unlikely that a layperson would be more aware of that risk."). Moreover, *Martin* is the only case from the Arkansas Supreme Court, and the *Martin* court held that "where there is a genuine issue of material fact regarding discovery, the trier of fact must determine when [the plaintiff] was first made aware of the nature of the harm caused by [the product] or, alternatively, when she should have discovered the causal connection, for the statute of limitations to begin to run." 3 S.W.3d at 690.

The undisputed facts taken in conjunction with the Arkansas state courts' interpretation of section 16-116-103 lead this court to agree with BSC. The statute of limitations began to run on July 5, 2005, upon Ms. Brawley's mesh removal surgery, when Dr. Scriber explained to Ms. Brawley that the mesh had eroded into her bladder. Consequently, Ms. Brawley's lawsuit, filed on May 31, 2013, is barred by Arkansas's statute of limitations. The record before the court establishes that Ms. Brawley knew or, in the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered on July 5, 2005, when she underwent a repair procedure. At that time, Dr. Scriber informed Ms. Brawley that her symptoms were a result of the implantation of the Advantage sling. Moreover, Ms. Brawley recognizes that the purpose of the procedure was to "resolve her ongoing mesh related injuries." (Pl. Fact Sheet [Docket 30-1], at 6). The record thus indicates that on July 5, 2005, almost eight years before she filed her complaint, Ms. Brawley was aware of both her injury and the probable causal connection between her injury and the Advantage.

The plaintiffs' arguments are unpersuasive. First, in a misstatement of the law, plaintiffs admit that Ms. Brawley recognized that she was having injuries that resulted from the Advantage being inside of her bladder on July 5, 2005, but argue that she was not aware that a defect in the Advantage sling itself was the cause of her problems. (Resp. [Docket 65], at 5). However, as explained above, when the plaintiff attributed her injury to a defective product is not the relevant question in Arkansas. Rather, the court must ask "when the plaintiff first [became] aware of his or her condition, including both the fact of the injury and the probable causal connection between the injury and the product's use, or when the plaintiff by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *IC Corp.*, 385 S.W.3d at 883. And the undisputed facts demonstrate that Ms. Brawley should have discovered the causal connection between the product and the injuries suffered on July 5, 2005, when Dr. Scriber informed Ms. Brawley that her symptoms were a result of the implantation of the Advantage sling and that he would need to remove the portion of the sling that was inside the bladder. The plaintiffs next point to Ms. Brawley's vaginal exploration procedure for more TVT tape as evidence that she was unaware of the defective nature of BSC's mesh slings. Again, this is not the standard under Arkansas law. Lastly, plaintiffs argue that when Ms. Brawley conducted her own research into the product, nothing told her that the Advantage was defective. Instead, she was led to believe that her implanting physician negligently inserted the mesh. The quality of Ms. Brawley's research does not change the fact that she had previously discovered all that section 16-116-103 requires to trigger the statute of limitations. In fact, her Internet search into the product, and subsequent visit to an attorney, further evidence her knowledge of causation.

"[I]f there is any reasonable doubt as to the application of the statute of limitations, [the

Arkansas Supreme Court] will resolve the question in favor of the complaint standing and against the challenge." *State v. Diamond Lakes*, 66 S.W.3d 613, 616 (Ark. 2002). The evidence in this case, however, is clear: Ms. Brawley discovered her injuries and a possible causal connection between the product and her injury on July 5, 2005. No reasonable jury could find otherwise. Therefore, I **FIND** that the statute of limitations for her products liability claims ran until July 5, 2008, almost five years before she filed suit, and as a result, her claims are barred by Arkansas' statute of limitations.

Mr. Brawley's claim for loss of consortium is dependent on the success of Ms. Brawley's claims. *See Sisemore v. Neal*, 367 S.W.2d 417, 418 (Ark. 1963) (quoting *Tollett v. Mashburn*, 291 F.2d 89 (8th Cir. 1961) (finding that a loss-of-consortium claim is "derivative and depends upon the wife's successful suit for damages")). A judgment against a personal-injury plaintiff bars a claim by her husband for loss of consortium arising out of the same facts. *Id.* Therefore, I **FIND** that Mr. Brawley's claim is time-barred as well.

### IV. Conclusion

For the reasons stated above, BSC's Motion [Docket 30] is **GRANTED**, and this case is **DISMISSED with prejudice**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 31, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE